UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Criminal No. 18-CR-10198-DJC |
| ) | |
| MEGAN HAWES,    ) | |
|     Defendant.    ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.    BACKGROUND**

Over the course of more than a year, Megan Hawes ("Hawes" or "defendant") embezzled more than 9,700 pieces of mail while employed as a United States postal carrier.  After being confronted by United States Postal Service ("USPS") agents, she initially lied about her theft.  On June 21, 2018, Hawes was charged with Theft of Mail Matter by Postal Service Employee, in violation of 18 U.S.C. § 1709.  The true victims in this case are the approximately 1,095 individuals who did not receive their mail because of the defendant's criminal actions.

This thirty-year old defendant knew right from wrong when she stole and rifled through thousands of pieces of mail.  She abused her position of trust.  She is an educated woman who was employed by the post office for almost 18 months before resigning her position as a result of the instant offense.  She is a high school graduate who has completed one semester of college. *See* Presentence Report ("PSR") ¶¶ 63, 65.  She has no history of mental or emotional problems. *See* PSR ¶ 58.  She lied to USPS on the date she was confronted with the theft by initially denied stealing any mail and also told agents that she had no substance abuse issues.  However, one day later, she resigned from the USPS and in her resignation letter, indicated she does have a substance abuse issue.  Soon thereafter, she began to reside at a sober house which she remains

at.  In her interview with U.S. Probation for the PSR, the defendant related that she has a history of chronic substance abuse and first began abusing substances at age 15.  *See* PSR ¶¶ 54, 59, 60.  Per the PSR, since her arrest, the defendant has participated in detox, inpatient treatment, and outpatient treatment.  *See* PSR ¶ 62.  The government is cognizant of the information contained in the PSR concerning this thirty year old defendant's history and has factored that into consideration when fashioning its recommended sentence.   However, the defendant's crime was not isolated to one day or one incident but rather were repeatedly committed over approximately eighteen months.

In light of the facts presented in this case, the government recommends a period of two years of probation, continued substance abuse treatment as determined by U.S. Probation, 80 hours of community service, a $100 mandatory special assessment, and restitution as determined by the Court.   This defendant stole from the citizens of the community she was hired to deliver mail to.   As such, community service should be made part of the sentence.   The government asserts that this sentence comports with the factors outlined in 18 U.S.C. § 3553(a), including the nature and circumstances of these offense, the need for the sentenced imposed must reflect the seriousness of the offense and promote respect for the law, the characteristics of the defendant, and both specific and general deterrence.

**II.         U.S.S.G. CALCULATIONS**

In the PSR, U.S. Probation calculated the defendant's total offense level as follows: per U.S.S.G. § 2B1.1 , the base offense level is 8.   Per U.S.S.G. § 2B1.1(b)(2)(A)(i), there is a 2 level enhancement, since the offense involved 10 or more victims.   There is an additional 2 level enhancement because at the time of the offense, the defendant was a U.S. postal worker who

abused a position of public or private trust, in a manner that significantly facilitated the commission or concealment of the offense. U.S.S.G. § 3B1.3, Application Note #2(A). The adjusted offense level is 10. With a 2 level reduction for acceptance of responsibility, the total offense level is 8. *See* PSR ¶¶ 28-36. With a criminal history category of I and a TOL of 8, U.S. Probation calculates the advisory guideline range to be 0-6 months (Zone A). *See* PSR at ¶¶ 41, 76. The defendant faces a statutory maximum of 5 years of imprisonment on her conviction. *See* PSR at page 1 and ¶ 75. The defendant faces a statutory maximum of three years of supervised release. *See* PSR ¶ 78. Statutorily, the defendant faces a minimum of not less than one nor more than five years of probation. *See* PSR ¶ 80.

### III.     TITLE 18 UNITED STATES CODE SECTION 3553(a) FACTORS

1. **Nature of the Offense**

In calculating the sentence, the Court should consider the seriousness of the offense this defendant now stands convicted. *See* 18 U.S.C. § 3553(a) (requiring assessment of the nature and circumstances of a defendant's offense). This was neither an isolated event nor an aberration by the defendant. Rather, it was a knowing, deliberate, and repeated actions by the defendant over a period of time from on or about March, 2017, through on or about May 10, 2018, in Roslindale, Massachusetts.

From September 2016, to May 2018, Hawes was employed as a United States letter carrier assigned to Roslindale. On March 30, 2018, the defendant, who was the driver and sole occupant of a gray Nissan Xterra with an expired inspection sticker, was stopped by a Weymouth Police Department ("WPD") officer after he observed the sticker on the windshield and confirming the car was unregistered. Police towed the car to an impound lot in Weymouth

where it remained. On May 10, 2018, WPD notified the USPS/Office of Inspector General ("OIG") that the car was at an impound lot in Weymouth and that it contained voluminous amounts of undelivered and opened U.S. mail. USPS went to the lot and through the windows of the gray Nissan Xterra, agents observed a large amount of mail and some of it appeared to have been rifled through.

On that same date of May 10, 2018, USPS confirmed that Hawes was employed by USPS as a mail carrier who had an agreement with USPS which allowed her to deliver mail using a personal vehicle, rather than a postal service truck. On that date, USPS confirmed that Hawes was currently out on her assigned delivery route delivering mail in a yellow Nissan Xterra.

During an interview with USPS at the Roslindale Post Office later that same day, agents informed Hawes they were aware of her drive-out agreement with USPS and asked her what vehicle she drives to deliver the mail. Hawes stated she is currently using a yellow Nissan Xterra and prior to that, she drove a gray Nissan Xterra.

When asked if she has ever taken mail home with her, Hawes stated on a few occasions, she accidently took home mail because she did not realize it was in her satchel but she always brought the mail back for delivery the next day. When asked if she always delivers the mail assigned to her, she stated she always does so. When agents asked why postal customers whom she is assigned to deliver mail to may not be receiving all of their mail, Hawes stated she had no idea. When asked if there was any mail other than that day's delivery mail in the yellow Nissan Xterra she was driving, Hawes answered no and also stated there was no mail in the gray Nissan Xterra, which she had previously been driving.

Hawes was informed by agents that they knew there was mail present inside of the gray

4

Nissan Xterra, which was currently parked at a tow company in Weymouth. Agents asked Hawes if she had been stealing mail. Hawes then admitted that she had been stealing mail and had not been delivering mail. When asked what she was stealing, Hawes stated she was looking for cash. After initially stating she took cash from mail a couple of times, Hawes then stated she had stolen parcels and mail multiple times and had opened mail that she had stolen.

Hawes told USPS agents that she does not have a drug or alcohol problem. Hawes stated she would steal things on impulse and to get money to pay for items including marijuana, gas, and cigarettes. She stated her thefts were in spurts; she would steal for a week and then not steal during the following week. She stated she was looking for greeting cards with cash and also stole and used gift cards that she found. According to Hawes, it was fair to say she was stealing five mail pieces per day, or whatever was available. When agents asked Hawes if there was mail in any location other than her boyfriend's (gray) Nissan Xterra, she stated that was the only place where she had any mail.

On that same date, Hawes also provided a short written sworn statement and wrote that she was currently earning the only income in the household and those financial problems have caused her to have periods of taking money and gift cards from greeting cards, and taking parcels. She said she would start and stop based on need and opportunity. She also wrote that behavior stopped since the time she was pulled over while driving that car.[1]

At the completion of the interview, agents walked Hawes out to the parking lot to the yellow Nissan Xterra to retrieve the undelivered mail from the day. As they were retrieving

---

[1] Contrary to Hawes' statement, agents located additional undelivered and rifled mail in the gray Nissan Xterra on May 10, 2018.

bins of mail from that day which had not yet been delivered, agents also observed rifled, opened mail in the car.   Hawes admitted that she had stolen and ripped open that mail.   Agents retrieved 21 pieces of undelivered rifled mail, including letters and gift cards, which she admitted that she had opened and stolen.[2]   Of the approximately 21 pieces of mail, approximately 13 of those pieces had no postmark on the envelope as they were stolen by Hawes that same day of May 10, 2018, prior to any mail processing by the post office.   The remaining envelopes had first-class postal date-stamp affixed to the outside of each envelope.   The earliest postmark date on any of the 21 pieces of mail was March 30, 2018.   In total, there was $235 in various gift cards found in the yellow Xterra, which Hawes stole, including $50 Home Depot gift card, $50 Mastercard Gift card, $25 Amazon gift card, $25 Chico's gift card, another $50 Amazon gift card, and a $35 Amazon gift card.

After obtaining consent to search the gray Nissan Xterra from Hawes' boyfriend, SF, search his vehicle on May 10, 2018, USPS/OIG searched the gray Nissan Xterra and recovered thousands of pieces of undelivered mail which had not been rifled through as well as hundreds of pieces of rifled mail pieces.   Thereafter, USPS/OIG counted the rifled mail pieces seized from the gray Xterra and determined there was over 400 pieces of rifled mail.   Agents also counted and determined there was more than 9,000 pieces of undelivered mail seized from that same vehicle.   The earliest postmark date on the outside of an envelope for the undelivered mail was back to March, 2017 and the most recent postmark date was March 30, 2018, which was the date Hawes was stopped by police while driving that gray Xterra.   During that review, agents also

---

[2] In addition to those 21 pieces of mail, USPS also seized a few bins of unopened and undelivered mail from the yellow Xterra on May 10, 2018 which they seized and delivered.

found an additional 300 pieces of rifled mail amongst the undelivered mail.   In total, there was approximately 9,700 pieces of mail seized from the gray Nissan Xterra that was either rifled or unopened mail and which had not been delivered.   The rifled mail consisted of letters, packages and boxes.   Some mail contained money or gift cards.   The undelivered mail included, but was not limited to, cards, bills, advertisements, magazines, and juror service summons.   *See* exhibits #1-4.   Given the volume of mail Hawes stole and kept in that gray Xterra, USPS was unable to determine from which letters, packages and boxes the money and gift cards were stolen from.

On May 11, 2018, Hawes resigned from the USPS.   It is clear from the facts that the defendant's prolonged conduct is both serious in its nature and in its impact on the community.

2. **The sentence imposed must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The seriousness of the offense is important to consider.   The defendant held a position of trust and abused that trust by stealing thousands of pieces of mail then rifling through the mail in an attempt to locate and steal cash and gift cards.   Given the lengthy period of time over which she committed this offense and given the extremely large volume of mail that she embezzled, USPS has been unable to make a determination of the total amount of loss to the victims. However, her criminal actions have had a negative effect on the people she was hired to deliver mail to.   As one victim stated in the written impact statement:

"At least twenty one pieces of mail that I sent were intercepted or lost… One item was sent to [XXXX] with a twenty dollar bill enclosed.[3]   The card was never received.   A second card was mailed to [XXXX] with a check enclosed.   The card was never received and the check was never cashed.   I feel that the accused should make restitution for the twenty dollars.   She should be punished for her crimes.   The check was never cashed but a crime of intent was committed.   If the victim is herself a victim of drug abuse, I would encourage the judge to get her the treatment she needs.   She should have to do some community service, wear a GPS

---

[3] For privacy, the name [XXXX] has been redacted in the impact statement.

monitor, attend support meetings and make restitution to all those victims who have suffered a monetary loss. I do not think she would receive the help that she needs if sent to prison. If freed, she should be closely monitored with a strong support system in place so she can truly be rehabilitated. After all she did commit many crimes…"

*See* Victim Impact Statement from VIN 5873123 attached as Exhibit #5.

As another victim highlighted in his/her victim impact statement, the defendant betrayed peoples' trust. That victim wrote, in part:

"My known losses appear to be relatively few…However, beyond the material losses, there has been an impact. First of all, there is the betrayal of trust. The US Postal Service is extremely important as a conveyor of all sorts of persona, financial and business correspondence. I used to have complete confidence in the postal system, though I know that unscrupulous individuals are known to steal delivered mail and packages from doorsteps and mailboxes, especially at tax time and holidays. But I would never have suspected that the theft could come directly from a postal employee. It is crucial that citizens have confidences in our government institutions…[I]t is doubly sad and disappointing when the perpetrator is a government employee…A second impact is the anxiety and uncertainty of not knowing exactly what was taken from me and how my mail and whatever information it contained is being used…These are questions that may possibly remain forever and disturb the sought-after tranquility of my advanced years…"

*See* Victim Impact Statement from VIN 5872056 attached as Exhibit #6.

3. **Specific and General Deterrence**

The Court should also consider specific and general deterrence in this case. *See* 18 U.S.C. § 3553(a)(2)(B),(C) (the district court may impose a sentence "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant"). The defendant must understand that she cannot commit this crime without significant consequences. The government asserts that its recommended sentence of a two year period of probation with substance abuse treatment, community service and restitution is an appropriate significant sentence which will communicate to the defendant that there are consequences to committing the crime which she now stands convicted of. An equally important consideration here is general deterrence. A period of probation longer than the minimum mandatory one year

period will send a message to similarly situated individuals who have committed the same or similar serious crimes, that if they are caught and are convicted in federal court, they too will face stiff punishment. Additionally, the government asserts that as Hawes stole from the community, community service should be imposed as part of her sentence.

## IV.  CONCLUSION

In light of the foregoing, the government recommends the imposition of a two year period of probation, continue with substance treatment as determined by U.S. Probation, 80 hours of community service, a $100 mandatory special assessment, and restitution as determined by the Court.   The government argues that the proposed sentence properly takes into account and balances the various § 3553 factors, as discussed above and that it is a sufficient, but not greater than necessary, sentence that complies with the dictates of that provision.   This sentence is an appropriate one that the government urges this Court to adopt.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:   */s/ Suzanne Sullivan Jacobus*
       Suzanne Sullivan Jacobus
       Assistant U.S. Attorney

Dated:   March 5, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney